# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CALVIN LOFTON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE DOBBINS, | ) | **Case No: 3:20-CV-0012** |
| in his individual and official capacity | ) | **Chief Judge Waverly D. Crenshaw Jr.** |
| as Captain and Jail Commander, et al., | ) | **Magistrate Judge Barbara D. Holmes** |
| | ) | **Jury Demand** |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Plaintiff, Calvin Lofton, files this Response to Defendants' Motions to Dismiss Defendants in their Individual Capacities. This Court should deny Defendants' Motions because Lofton has pled sufficient facts to plausibly suggest that (1) his Eighth Amendment rights were continuously violated when he was placed in solitary confinement long-term because of his medical condition; (2) that the continued deprivation of freedom by his placement in solitary confinement long-term and without adequate opportunity to be heard violated his procedural due process rights; and (3) that Defendants' continued denial of all exercise time while he was locked in a cell virtually all day, with limited outside the cell time and no inmate interaction, violates clearly established law in the Sixth Circuit.

## INTRODUCTION

Placing inmates in solitary confinement destroys their minds, bodies, and souls. Here Defendants in their individual capacities (herein, Defendants) placed Calvin Lofton (herein, Lofton) in a cell for 15 months, with no time outside, no interaction with other inmates, and

limited time outside of his cell despite knowing there was no penological reason for such placement. These acts subjected Lofton to cruel and unusual punishment, inflicting lasting mental and emotional damage that continues to this day.

## LEGAL STANDARD FOR A 12(b)(6) MOTION TO DISMISS

Reviewing a motion to dismiss for failure to state a claim begins with Rule 8 of the Federal Rules of Civil Procedure, which mandates that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Also, and notably: motions to dismiss are viewed with disfavor and rarely granted. Nuchols v. Berrong, 141 F. App'x 451, 453 (6th Cir. 2005).

That established, the question that confronts this Court, at this litigation stage, is "not whether [Plaintiffs] will ultimately prevail" [on their claims], but whether [their] complaint was sufficient to cross the federal court's threshold." Skinner v. Switzer, 562 U.S. 521, 529–30 (2011). Respecting that threshold, generally speaking, a court must accept factual "allegations of [Plaintiffs'] Complaint and supporting affidavits as true"—and the reasonable inferences derived from those accepted-true facts are also deemed true. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172 (1967); see also Cooper v. Pate, 378 U.S. 546, 546 (1964); see also Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 207) (stating that the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff.") But, that tenet "is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 663.

Nevertheless, detailed factual allegations are not required. Id. Said differently by the U.S. Supreme Court: "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a

plausible 'short and plain' statement of the plaintiff's claim, *not an exposition of his legal argument*." Skinner, 562 U.S. at 530 (2011) (emphasis added). A "plausible" claim is one that creates "[a] reasonable expectation that discovery will reveal evidence of plaintiff's claims." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Significantly, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Iqbal, 556 U.S. at 663-64; Cf. United States v. Marino, 562 F.2d 941, 945 (5th Cir. 1977) (stating, "[c]onsidering that Judges have, or at least are assumed to have, common sense and are to use it in their varied determinations, it would be ironic to hold that an appeal to this quality of intellect, wisdom and experience would be wrong").

Therefore, a court should not dismiss an action for failure to state a claim, unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. Lewis v. ACB Business Services, Inc., 135 F.3d 389, 406 (6th Cir. 1998). The "plausibility standard requires only that the complaint's factual allegations "be enough to raise a right of relief above the speculative level." Twombly, 550 U.S. at 555.

In sum, after applying common sense and experience to the Plaintiffs' well pled facts, this Court must conclude that they merely "*nudged* [their] claims across the line from conceivable to plausible," in order to dismiss Defendants' Motion. Id. at 556, 570 (emphasis added).

## ARGUMENT

This Court should deny Defendants' Motions because Lofton has pled sufficient facts to plausibly suggest: (1) that his Eighth Amendment rights were continuously violated when he was placed in solitary confinement long-term because of his medical condition; (2) that the continued

deprivation of freedom by his placement in solitary confinement long-term and without adequate opportunity to be heard violated his procedural due process rights; and (3) that Defendants' continued denial of all exercise time while he was locked in a cell virtually all day, with limited outside the cell time and no inmate interaction, violates clearly established law in the Sixth Circuit.

## I. Plaintiff's ADA claims should be limited to the Official Capacity Defendants

The Sixth Circuit has consistently held that Americans with Disability Act (ADA) claims arise only against the "public entity" itself and not the individual member of that entity carrying out the discriminatory actions. Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007). Plaintiff's ADA claims are, therefore, necessarily directed only at the Defendants in their official capacities. Id.

## II. Plaintiff's Eighth Amendment claim is not barred by the statute of limitations

Defendants assert that Lofton has not alleged any action or inaction by any of the named Defendants within the limitations period and that Lofton's claims are not saved by the continuing violation doctrine. (ECF 29, p. 6.) Defendants' assertions are incorrect. Lofton has alleged that facts that plausibly suggest that each individual Defendant committed acts within the limitations period that violated his Eighth Amendment rights and the violation was a continuing one that saves pre-limitations claims.

### a. Legal Standard

The statute of limitations in § 1983 actions is that of the state: "applicable to personal injury actions under the law of the state in which the § 1983 claims arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). Within the state of Tennessee, the statute of limitations period is one year. Tenn. Code Ann. § 23-3-104(a). The continuing

violation doctrine tolls the running of the statute of limitations on claims. <u>Sharpe v. Cureton</u>, 319 F.3d 259, 266 (6th Cir. 2003). There are two distinct categories of continuing violations in the Sixth Circuit: those alleging serial violations and those identifying a longstanding and demonstrable policy. <u>Id.</u> These two categories have been summarized by the Sixth Circuit:

> "The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work.... The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure."

<u>Id.</u> at 266-67. While most commonly applied to Title VII cases, the doctrine can be applied to § 1983 violations. <u>Id.</u> Discrete discriminatory acts cannot constitute a continuing violation, though each does generate a new limitations period. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).

### a. Plaintiff's Complaint alleges a continuing violation of Lofton's Eighth Amendment rights

The Complaint states sufficient facts to plausibly suggest a continuing violation by the Defendants that tolls the statute of limitation. The Complaint alleges, and it is considered true, that Lofton was placed in solitary confinement, without penological reason, as a result of his need to wear tennis shoes as a double amputee. (ECF 1, ¶ 23.). It further alleged and considered true that each of these Defendants oversaw the placement of individuals within the jail, including reviewing and approving documents associated with placing inmates in solitary confinement. <u>Id.</u> at ¶¶ 73-76. Lofton remained in solitary confinement, despite being interviewed by each Defendant and was refused all reassignment or removal. <u>Id.</u> Lofton was not the only inmate

placed in solitary confinement as a result of a medical condition. Id. at ¶ 134. Any inmate who entered Williamson County Jail with any impairment or disability was placed in solitary confinement. Id. at ¶ 137. This included, at least, an inmate with a prosthetic leg and another with a soft brace on his wrist. Id. at ¶¶ 135-36.

Defendants' actions here closely resemble that of the first category of violations described by the Sixth Circuit: "where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work." Sharpe, 319 F.3d at 266. Lofton has stated sufficient facts to plausibly suggest that he has been given a disparate housing assignment, and continued to be given that assignment upon review, which was unequal to that of general population. Id. Such allegations plausibly suggest that Lofton was subjected to a continuing violations that meets the requirements of the first category of delineated in the Sixth Circuit. Id.

Further Lofton has alleged sufficient facts to plausibly suggest a continuing violation under the second category identified by the Sixth Circuit. Lofton has stated facts sufficient to plausibly longstanding policy of Williamson County Jail, that applies to all inmates that enter with a medical condition, of placing them in solitary confinement. (ECF 1, ¶¶ 173-75.) This policy was applied to Lofton during the course of the statue of limitations as well. Id. This formal policy against all inmates with a medical condition or disability and the continued deprivation of Lofton's Eighth Amendment rights coincides with the second category of continuing violations identified by the Sixth Circuit. Sharpe, 319 F.3d at 266-67.

Finally, in the alternative, Lofton has pled sufficient facts to plausibly suggest that each time Lofton was interviewed and each time that his paperwork was reviewed but that he was denied release from solitary confinement constitutes a discrete action subjecting Lofton to cruel

and unusual punishment in solitary confinement. Id. As such, each such action would constitute a new limitations period upon which suit could be brought, rendering Lofton's claims for Eighth Amendment violations timely at least from December 26, 2018. Id. As such, the Defendants' Motion to Dismiss is due to be denied.

### III. Plaintiff's Procedural Due Process claim is not time barred[1]

Defendants' argument that Lofton's procedural due process claim is time barred fails, as Lofton suffered the continued injury of solitary confinement without the process due him throughout his time in Williamson County Jail. Defendants' continuous denial of Lofton's right to procedural due process with regards to his placement in solitary confinement endured each and every day Lofton spent in solitary confinement. See Eidson v. State of Tennessee Dep't of Children's Servs., 510 F.3d 631, 636 (6th Cir. 2007) (noting finding "that plaintiff had alleged wrongful acts by defendants that post-dated the initial removal of his daughters, i.e., the continued denial of custody without proper notice and hearing").

The statute of limitation on a § 1983 action is that of the personal injury statute of limitation from the applicable state. Eidson., 510 F.3d at 634. When that statute of limitations begins to run is a matter of federal law. Id. To determine when the limitation period begins to run, courts look to when events would have alerted an ordinary person of the need to protect his or her rights. Id. An exception to the limitations period is that for a continuing violation. "The test for determining whether a continuing violation exists is summarized as follows:

> "First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern.... Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct."

Id.

---

[1] Plaintiff will not pursue the Substantive Due Process claim against the individual Defendants at this time.

### a. Defendants' continued refusal to provide Lofton with any procedural due process is a continuing violation

Defendants assert that Lofton's procedural due process claim is barred, as the only denial of such process occurred once, more than one year prior to the filing of this action and was thereafter only passive inaction. (ECF 29, p. 9.) This argument, however, fails under the weight of authority in the Sixth Circuit. As Defendants' acknowledge, in due process cases it is "the allegedly infirm process" that "is an injury in itself." Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp., 839 F.3d 458, 461 (6th Cir. 2016) (quoting Nasierowski Bros. Inv. Co. v. City of Sterling Heights, 949 F.2d 890, 894 (6th Cir. 1991)). A review of relevant caselaw is instructive.

In cases where there was some process offered, the limitations period generally runs from the time the inadequate or defective process occurred. For instance, in Massey, the plaintiff was placed in segregation after a disciplinary hearing that found him guilty of possession of a weapon and contraband. Massey v. Stringfield, 826 F.2d 1064 (6th Cir. 1987). Plaintiff filed suit, alleging that defendants had violated his due process rights in failing to permit him to present witnesses in his defense. Id. In dismissing his suit, the Sixth Circuit found that this denial was not a continuing violation that tolled the limitations period. Id. Where an individual is denied a liberty interest without any process, however, that denial does constitute a continuing violation.

In Eidson, the Sixth Circuit was presented with a procedural due process claim by parents whose children were removed from their custody without a hearing for seven months. Eidson v. State of Tennessee Dep't of Children's Servs., 510 F.3d 631, 633 (6th Cir. 2007). After a hearing was finally held, and the children returned to the plaintiff, a suit was filed alleging a violation of plaintiff's procedural due process rights, more than one year after the children were removed

from plaintiff's custody. Id. The Sixth Circuit acknowledged the finding that the plaintiff had alleged wrongful acts by the defendants that post-dated the initial removal of the children, constituting a continuing violation, that is "the continued denial of custody without proper notice and hearing." Eidson v. State of Tennessee Dep't of Children's Servs., 510 F.3d 631, 636 (6th Cir. 2007). The Sixth Circuit found that the violation ended on the date that the plaintiff was finally offered a hearing, from which point the limitations period began to run. Id.

Here, unlike in Massey, Lofton was held in segregation without any due process at all. (ECF 1, ¶ 47.) Defendants' denial of any procedural due process is akin to that faced by the plaintiff in Edison and, like in Edison, Lofton has stated a continuing violation that tolled the statute of limitations until the time Lofton was released from solitary confinement, throughout which ne never received a hearing. Edison, 510 F.3d at 633.

In an effort to circumvent this clear precedent, Defendants assert that they engaged in mere passive inaction, like in Stansell, that does not constitute a continuing violation. (ECF 29, p. 8.) Stansell, however, is distinguishable from Eidson and this case. In Stansell, the plaintiff requested to be placed on single cell status as a reasonable accommodation under the Americans with Disabilities Act (ADA) so as to have continuous, immediate, access to a toilet after a stoma reversal surgery. Stansell v. Grafton Corr. Inst., No. 1:17-CV-1892, 2020 WL 364241, at *1 (N.D. Ohio Jan. 22, 2020); Exhibit 1. Based on the facility's ADA Coordinator's recommendation, the warden partially granted Stansell's request, moving him to a cell with access to a handicapped bathroom but assigning Stansell a cellmate. Id. Stansell appealed the decision through the internal appellate process and then, more than a year later, filed suit. Id. In applying the continuous violation doctrine to Stansell's suit, the District Court held that the decision to assign the cellmate was the discrete act that triggered the tolling period, thereafter the

cellmate was simply a continuing effect of that decision and not a continuing violation of the ADA. Id. at *4. Unlike Lofton, however, Stansell was provided procedural protections related to the ADA claim, including an appeal to the Special Needs Assessment Committee. Id. Further, the assignment of the cellmate was not the act constituting a violation of the ADA, it was the act of denying the accommodation request that was the alleged violation. Id. These two facts distinguish Stansell from this instant case and Eidson. In both this case and Eidson, it is the denial of any process pending the deprivation of a liberty interest that was the violation of the due process clause, which denial continued until the deprivation ended or a hearing was provided. Eidson, 510 F.3d at 636.

Just as in Eidson, Lofton has stated a due process claim that constitutes a continuing violation, which means that the statute of limitations did not begin to run until January 8, 2019, when Lofton was released from solitary confinement without ever having received a hearing. (ECF 1, ¶ 36.) The Defendants' Motion is due to be denied.

IV.    **Defendants violated clearly established law in placing Lofton in solitary confinement without penological justification and are therefore not entitled to qualified immunity**

The Supreme Court has long held that solitary confinement presents deeply troubling concerns, having noted that those concerns were expressed as far back as 1890. Apodaca v. Raemisch, 139 S. Ct. 5, 6, 202 L. Ed. 2d 251 (2018) (cert denied on other grounds) (citing In re Medley, 134 U.S. 160, 168, 10 S.Ct. 384, 33 L.Ed. 835 (1890). This concern has been expressed by courts in a variety of ways. One crucial expression of concern is that "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983). This case provides clear notice that Defendants' solitary confinement of Lofton violates clearly established law.

### a. Legal standard

Prior to any analysis of whether or not an officer's conduct was proscribed by clearly established law—all courts in this country must define the right allegedly violated at the 'appropriate level of specificity.' Wilson v. Layne, 526 U.S. 603, 610, 119 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999) (stating, "[a]s we explained in *Anderson,* the right allegedly violated must be defined at the appropriate level of specificity *before* a court can determine if it was clearly established.") (emphasis added.) After that has occurred, then—and only then—can a court properly determine whether clearly established statutory or constitutional law provided an officer with fair warning regarding the alleged unlawfulness of his or her conduct. See e.g., United States v. Lanier, 520 U.S. 259, 271 (1997); Hope v. Pelzer, 536 U.S. 730, 739 (2002); Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014); Baynes v. Cleland, 799 F.3d 600, 612-13 (6th Cir. 2015).

A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that his action violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The salient question is whether the state of the law at the time of the official's actions gave them fair warning that their actions were unconstitutional. Hope, 536 U.S. at 739. The Supreme Court has held that it is not necessary for the precise factual scenario challenged to have been ruled unconstitutional for the right to be clearly established. Id. at 741. Indeed, the Hope court noted that the rigid gloss of factual similarity is inconsistent with their cases. Id. at 739. General statements of law are capable of giving clear, fair warning and a general constitutional rule already identified may apply with obvious clarity to specific conduct, such that fair warning exists though the very act in question has not previously been ruled unconstitutional. Id. at 741. Simply said, officials can be on notice

even in novel factual circumstances so long as the unlawfulness of the official's act is apparent in light of pre-existing law. Id.

The Sixth Circuit has embraced the principles espoused in Hope as well. Baynes, 799 F.3d at 611 (collecting cases). The Sixth Circuit noted that generalizations and abstract propositions are insufficient to establish a law clearly, rather existing precedent must have placed the question beyond debate although the specific conduct need not have been found unconstitutional. Id. at 612. Summarizing its precedent, the Sixth Circuit stated that "the Supreme Court has made clear that the *sine qua non* of the "clearly established" inquiry is "fair warning." While it is apparent that courts should not define clearly established law at a high level of generality, it is equally apparent that this does not mean that "a case directly on point" is required." Id. (internal citations omitted).

That established, demonstrating that pre-existing law provided an officer with fair warning about the apparent unlawfulness of his or her conduct can be accomplished in a couple of ways. Officers have fair warning of their apparent unlawful conduct when the confluency of controlling case law have sufficiently clarified a particular right in a manner that provided fair notice to an officer about the apparent unlawfulness of his or her conduct, irrespective of factual distinctions. Anderson v. Creighton, 483 U.S. 635, 640 (1987); Hope, 536 U.S. at 741-46; Lanier, 520 U.S. 259.

Second, qualified immunity should also be denied if a court identifies a general constitutional rule already identified within precedential law that applies with obvious clarity to the specific conduct in question. Lanier, 520 U.S. 259. Under this rule, the apparent unlawfulness of the officer's conduct should be obviously clear in connection with controlling decisional law. Id.

To find a clearly established right, "a district court must find binding precedent by the Supreme Court, its court of appeals or itself." Daugherty v. Campbell, 935 F.2d 780, 784 (6th Cir. 1991). The Court may look to sister circuits if these decisions point unmistakably to the unconstitutionality of the conduct and are clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer of the unconstitutionality of his conduct. Id.

### b. Clearly established Sixth Circuit law demonstrates that Defendants violated Lofton's Eighth Amendment rights in denying him all yard time for the duration of his solitary confinement

Defendants urge this Court to grant qualified immunity on the basis that there is no clearly established right to be free from the practices alleged. (ECF 29, p. 12.) .) This assertion either fails completely to define the right at issue or defines it at so broad a level as to leave the Court unable to properly analyze whether the right as issue is clearly established. Wilson, 526 U.S. at 610, 119 S. Ct. at 1697, 143 L. Ed. 2d 818. The right at issue, defined at an appropriate level of specificity, is the right of an inmate placed in solitary confinement to at least a minimum of exercise or recreation time. Defined at that level of specificity, this right has been clearly established within this Circuit for decades, providing Defendants fair warning of its existence. Patterson, 717 F.2d at 289. While Plaintiff believes that it is clearly established that the Defendants' actions in placing Lofton in solitary confinement are unconstitutional, this more limited analysis is alone sufficient to deny qualified immunity.

The Sixth Circuit has noted that inmates "require regular exercise to maintain reasonably good physical and psychological health." Patterson, 717 F.3d at 289 (collecting cases). This need constitutes a "minimal civilized measure of life's necessities", the deprivation of which form the basis of an Eighth Amendment violation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (holding conditions which deprive inmates of minimal

civilized measure of life's necessities are cruel and unusual). As such, the Sixth Circuit has held that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." <u>Patterson</u>, 717 F.2d at 289.

While the Sixth Circuit has never set a minimum amount of recreation time, it has continued to find that extreme limitations on exercise may rise to the level of a constitutional violation. <u>Rodgers v. Jabe</u>, 43 F.3d 1082, 1086–87 (6th Cir. 1995). In a review just two years after <u>Patterson</u>, the Sixth Circuit cited approvingly to the Ninth Circuit opinion in <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979), that held that where inmates were permanently confined virtually the entire day in one cell, received "meager outside movement, and engaged in minimal prisoner contact, those inmates must receive one hour of outdoor exercise per day, five days a week." <u>Walker v. Mintzes</u>, 771 F.2d 920, 927-28 (6th Cir. 1985). Ten years later, the Sixth Circuit again noted with approval the <u>Spain</u> case, finding the lack of exercise violated the Eighth Amendment. <u>Rogers</u>, 43 F.3d at 1087.

Lofton alleges, and it is considered true at this litigation stage, that the Defendants placed Lofton in solitary confinement conditions that included 23 hours a day in his cell and one hour outside of his cell. (ECF 1, ¶ 36.) It is further alleged, and considered true, that on the days when Lofton was permitted to leave his cell for up to one hour, this hour did not include any recreation or outdoor time and was taken inside his cell's pod. <u>Id.</u> at ¶ 40. During his stay in solitary confinement, Lofton had no social interaction with other inmates. <u>Id.</u> at ¶ 46.

It is clearly established, as early as 1983 under <u>Patterson</u>, that such placement in solitary confinement with a total deprivation of any outdoor exercise time violated Lofton's right to be free from cruel and unusual punishment. <u>Patterson</u>, 717 F.2d at 289. At the most conservative, however, it is clearly established no later than 1995, twenty-two years prior to Lofton's stay with

Defendants, inmates like Lofton, who are held permanently in segregation, in a cell virtually the entire day, and who have meager outside of cell time and minimal inmate interaction, are required to receive some outdoor exercise time. Rogers, 43 F.3d at 1087; Walker, 771 F.2d at 927-28. As such, Lofton has stated sufficient facts to plausibly suggest that Defendants violated clearly established law under the objective component of an Eighth Amendment analysis.

### a. Lofton has stated sufficient facts to plausibly suggest that Defendants deprived him of a minimal civilized measure of life's necessities while aware of the risk of harm

As part of their argument that the law wasn't clearly established, Defendants assert that Lofton has failed to state facts sufficient to meet the requirements to set forth a claim for an Eighth Amendment violation. (ECF 29, p. 14.) This allegation fails under the law set forth *supra*. To state a claim for an Eighth Amendment violation, Lofton must set forth facts sufficient to plausibly suggest two elements: an objective element, that a serious deprivation of minimal civilized measure of life's necessities; and a subjective element, that the Defendants acted not with negligence but with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Lofton has stated sufficient facts, based upon the total denial of any exercise during his permanent confinement to a cell for 23 hours a day, with minimal out of cell time and no inmate interaction, to meet objective element of the Wilson test. As the Sixth Circuit has held, exercise is a necessity for inmates. Patterson, 717 F.3d at 289; see also Wilson, 501 U.S. at 304 (holding that exercise is an identifiable human need). A total deprivation of exercise violates the Eighth Amendment. Patterson, 717 F.3d at 289. Additionally, where inmates are held in a cell virtually all day, with minimal out of cell time and limited inmate interaction, greater exercise times are required. Id.; Wilson, 501 U.S. at 304 (citing to Spain, 600 F.2d at 199); Spain, 600 F.2d at 199. Lofton has alleged, and it is considered true, that he was held 23 hours a day in his cell, with

little time out of the cell and no inmate interaction, without any outdoor exercise offered. (ECF 1, ¶¶ 36, 40, 46.) As stated supra, these facts plausibly suggest that a serious deprivation occurred, satisfying the objective test set forth in Wilson. Wilson, 501 U.S. at 298.

The Complaint further states sufficient facts to demonstrate that the Defendants were deliberately indifferent to Lofton's deprivation as well, satisfying the subjective element of the Eighth Amendment violation. Id. To state a claim for deliberate indifference, it is necessary to show more than mere negligence: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 836 (1994).

The Complaint alleges, and it is considered true, that each Defendant was individually aware that Lofton was being held in 23:1 solitary confinement in Williamson County Jail, having signed or approved paperwork placing him there. (ECF 1, ¶¶ 84-86.) It is a further considered true fact that Defendants each knew about the damaging effects of long term solitary confinement, having read and heard about them in their professional lives and having personally witnessed those effects while visiting inmates held in such conditions in Williamson County Jail, including Lofton, during the time Lofton was held there. Id. at ¶¶ 64-84. Indeed, it is a considered true fact that each Defendant individually visited Lofton and spoke with him. Id. at ¶¶ 94-105. These facts plausibly suggest that Defendants both knew of the risks of this prolonged solitary confinement to Lofton's health and consciously disregarded that risk, or at the very least were aware of the facts from which that inference could be drawn and did, in fact, draw it. Farmer, 511 U.S. at 836. Having satisfied both the objective and subjective elements of the Wilson test, the Defendants' Motion is due to be denied.

**V.** **Defendants are not entitled to qualified immunity on Lofton's Fourteenth Amendment claim, as it was clearly established that Plaintiff had a liberty interest in not being placed in solitary confinement**

Defendants assert that under the Supreme Court's <u>Sandin</u> decision, inmates have no liberty interest in avoiding placement in solitary confinement. (ECF 29, p. 20.) This argument ignores two key points. First, all cases cited by Defendants, including <u>Sandin</u>, are cases discussing **disciplinary** placements in solitary confinement following a disciplinary hearing. <u>Sandin v. Conner</u>, 515 U.S. 472, 476, 115 S. Ct. 2293, 2296, 132 L. Ed. 2d 418 (1995). Lofton was not placed in solitary confinement for a disciplinary reason, he was placed in solitary confinement because of a soft brace on his wrist. Second, the Supreme Court has withdrawn from the key holding in <u>Sandin</u>, qualifying that holding on the facts of that case.

In <u>Wilkinson</u>, the Supreme Court held that placement in Ohio's supermax prison was an "atypical and significant hardship", as it involved no inmate contact, 23 hours a day in a cell, only an hour for exercise, impacted inmates' ability to get parole, and was indefinite, limited only by the length of an inmates sentence. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 224, 125 S. Ct. 2384, 2394, 162 L. Ed. 2d 174 (2005). While the Supreme Court held that any one of these conditions may not create a liberty interest protected by the due process clause, the combination of the conditions did. <u>Id.</u> Following <u>Wilkinson</u>, the Sixth Circuit made it clear that the duration of an individual's confinement in solitary was a consideration in determining if a liberty interest existed. <u>Harden-Bey v. Rutter</u>, 524 F.3d 789, 793 (6th Cir. 2008).

In this case, Lofton has alleged sufficient facts to plausibly suggest he had a liberty interest in remaining outside of solitary confinement. As an initial matter, Lofton was placed in solitary confinement based solely on the determination that the tennis shoes presented a safety concern, without any explanation for how or offer of available, reasonable, alternatives. (ECF 1, ¶¶ 31.) Lofton was not threatened by an inmate or guard, nor had he had any disciplinary

problems warranting solitary confinement. Id. at ¶¶ 50-60. This, alone, makes Lofton's confinement to solitary an "atypical and significant hardship" to which a liberty interest attaches. Wilkinson, 545 U.S. at 224. Beyond that, however, it is a considered true fact that Lofton was held in his cell 23 hours a day, with no inmate interaction, for an indefinite period of time limited only by his sentence. (ECF 1, ¶¶ 40-41, 46.) These conditions are remarkably similar to those in Wilkinson, which the Supreme Court found, in 2005, implicated the inmate's liberty interest. Wilkinson, 545 U.S. at 224. The exception is that Lofton did not get the hour for exercise that those in Wilkinson got. Id. Based upon this updated case law, Lofton has stated sufficient facts to plausibly suggest that his placement in solitary confinement implicated a liberty interest to be free from such confinement, requiring he be given some opportunity to be heard.

In a last ditch effort to avoid liability on Plaintiff's due process claim, Defendants assert that if an inmate's due process rights are violated by placement in solitary confinement based upon security concerns, then the ability to protect those in custody will be limited, demonstrating that the law was not well established at the time of Lofton's placement and that qualified immunity applies. (ECF 29, p. 29-30.) This argument fails under its own weight. First, Lofton asserts his due process rights were violated not only by placement in solitary confinement, but by placement in solitary confinement **without a hearing** or other opportunity to be heard. (ECF 1, ¶¶ 28-30.) Since 2005, the law has clearly established that placement in this kind of solitary confinement does implicate a liberty interest. Wilkinson, 545 U.S. at 224. As such, the Defendants' Motion is due to be denied.

## VI. Lofton alleges sufficient facts to plausibly suggest that Defendants Youker and Vandenbosch are liable for their failure to intervene and remove Lofton from solitary confinement

Defendants assert that failure to intervene cases are limited only to a narrow set of circumstances in excessive force cases. (ECF 29, p. 22, n. 15.) This is inaccurate. The key issue is that § 1983 claims require personal participation. See Miller v. Calhoun Cnty., 408 F.3d 803, 817, n.3 (6th Cir. 2005). Here, it is a considered true fact that Youker and Vandenbosch interviewed Lofton every 90 days, yet neither ever authorized his release. Id. at ¶¶ 72-73. Further, both Youker and Vandenbosch were responsible for overseeing the release of individuals from solitary confinement, including reviewing the documents of those held in solitary confinement, during the time that Lofton was held there. Id. at ¶¶ 77-78. Both Youker and Vandenbosch interviewed Lofton for entry into general population. Id. at ¶¶ 83-84. Despite having the authority to do so, and with full knowledge of Lofton's situation, Youker and Vandenbosch refused to remove Lofton from solitary confinement as was in their power to do, and denied requests from other guards that Lofton be removed from solitary confinement. Id. at ¶ 166.

Far from the passive inaction Defendants assert, the considered true facts demonstrate that Defendants were active participants in the continuing violation of Lofton's rights. A brief examination of Defendants' own case law demonstrates this point. In Shehee v. Luttrell, the plaintiff was an employee of the prison commissary who was fired allegedly as a result of grievances he filed. Shehee v. Luttrell, 199 F.3d 295, 297-98 (6th Cir. 1999). The plaintiff pursued grievances, all of which were denied. Id. He then filed suit against the supervisors of the guards who fired him, alleging that they failed to intervene by failing to correct the firing or approve the grievances. Id. The Court found that this was not sufficient to state a claim as it was a mere failure to act. Id. at 300. Here, it is a considered true fact that Defendants not only refused to act but actively denied requests from guards to remove Lofton from solitary confinement,

interviewed Lofton and reviewed the documents placing him in solitary confinement and refused to release him, and enforced the policy that placed Lofton in solitary confinement, a continuing violation. (ECF 1, ¶¶ 72-73, 77-79, 83-84, 166.) This is much more than a mere failure to act and plausibly suggests that Defendants Youker and Vandenbosch actively participated in the violation of Lofton's rights by their failure to intervene. Defendants' Motion is due to be denied.

### VII. Lofton alleges sufficient facts to plausibly suggest that Rhoades, Dobbins, and Long personally participated in the constitutional violations to state a claim

Finally, Defendants assert that the Complaint fails to state sufficient facts to show that Dobbins, Long, and Rhoades were personally involved in the violation of Lofton's rights sufficient to state a cause of action against Defendants. (ECF 29, p. 24-25.) This allegation is inaccurate. The Complaint states, and it is considered true, that Dobbins, Rhoades, and Long were responsible for creating, developing, implementing and/or enforcing the rules, regulations, and policies with respect to placing inmates like Lofton in solitary confinement. (ECF 1, ¶¶64-66.) It is further considered true that each of these Defendants was personally responsible for ensuring the care, health, and wellbeing of each individual within the jail. Id. at ¶¶ 6-8. It is further alleged and considered true that each of these Defendants oversaw the placement of individuals within the jail, including reviewing and approving documents associated with placing inmates in solitary confinement. Id. at ¶¶ 74-76.

These considered true facts plausibly suggest that Dobbins, Rhoades, and Long directly participated sufficiently to state a claim for supervisory liability, as shown in Taylor. In Taylor, the warden of a prison facility was personally responsible for both ensuring that all prisoner transfers were conducted safely and for developing reasonable transfer procedures. Taylor v. Michigan Dept. of Corr., 69 F.3d 76, 80-81 (6th Cir. 1995.) The warden, however, had delegated the ability to review and sign off on those transfers to his deputy wardens. Id. The warden

admitted he knew that his deputy wardens were further delegating this responsibility. Id. Here, just as in Taylor, Defendants were responsible for personally ensuring the care, health, and well being of each individual in the jail and of creating the procedures for placing individuals into solitary confinement that ensured that health and well being was protected. (ECF 1, ¶¶ 5-7, 89-91.) Instead, each Defendant was aware of and permitted Youker and Vandenbosch to place Lofton in solitary confinement without due process and in violation of his Eighth Amendment rights. (ECF 1, ¶ 222.) This failure to personally ensure that duty was met satisfies the requirements of personal involvement, just as in Taylor. Lofton's Complaint therefore states facts sufficient to plausibly suggest Defendants are supervisory liability under § 1983. The Defendants' Motion is due to be denied.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order Denying Defendants' Motion to Dismiss Defendants in their Individual Capacities, permitting discovery to continue, and granting such other and further relief as is just and proper.

Respectfully submitted this 19th day of March 2020,

/s/Dallas S. LePierre
Dallas S. LePierre, BPR #101126
Attorney for Plaintiff
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, GA 30303
(404)254-0442/(404)935-9391 FAX
dlepierre@ndh-law.com

/s/Mario B. Williams
Mario B. Williams, BPR #235254
Attorney for Plaintiff
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, GA 30303
(404)254-0442/(404)935-9391 FAX
mwilliams@ndh-law.com

/s/William H. Stover
William H. Stover, BPR #020537
Attorney for Plaintiff
Stover Law Group
222 2nd Ave. North, Ste. 326
Nashville, Tennessee 37201
(615)613-0541/(615)613-0546 FAX
ws@Wstoverlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Respectfully submitted this 19th day of March 2020,

/s/Dallas S. LePierre
Dallas S. LePierre, BPR #101126
Attorney for Plaintiff
NDH LLC
44 Broad Street, NW, Suite 200
Atlanta, GA 30303
(404)254-0442/(404)935-9391 FAX
dlepierre@ndh-law.com